# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

SHIRLEY A. WOOD, )
 )
 Plaintiff, )
 )
v. ) Case No. CIV-13-451-KEW
 )
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
 )
 Defendant. )

## OPINION AND ORDER

Plaintiff Shirley A. Wood (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 29, 1960 and was 51 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a cashier, fast food cook, sandwich maker, stock clerk, deli cutter/slicer, and security guard. Claimant alleges an inability to work beginning August 8, 2008 due to limitations resulting from back problems, migraines,

right hand problems, and mental health problems including depression and anxiety.

## Procedural History

On May 11, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 2, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Deborah Rose in Tulsa, Oklahoma. By decision dated December 30, 2011, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on August 26, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with restrictions.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate medical source evidence; (2) failing to perform a proper credibility analysis; and (3) failing to perform a proper determination at steps 4 and 5.

**Evaluation of Medical Source Evidence**

In her decision, the ALJ found Claimant suffered from the severe impairments of a strain in the low back and neck, obesity, asthma and/or chronic obstructive pulmonary disease ("COPD"), diabetes mellitus, intermittent explosive disorder, major depressive disorder, and anxiety. (Tr. 21). The ALJ determined Claimant retained the RFC to perform a full range of light work except the ALJ found Claimant was capable of superficial and incedental interaction with co-workers and supervisors. However, she could not be a member of a team and she may have no significant interaction with the public. Claimant was limited to simple, routine tasks. (Tr. 23).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of housekeeper/cleaner, bottling line attendant; and food production fruit cutter, all of which the expert testified existed in sufficient numbers nationally and regionally. (Tr. 26). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 26-27).

5

Claimant contends the ALJ failed to properly evaluate the opinion of her treating psychiatrist, Dr. Vanessa Werlla. Claimant received mental health treatment through Dr. Werlla at the Creoks Mental Health Services facility in Okmulgee, Oklahoma between July of 2009 and approximately October of 2011. (Tr. 241-50, 321-26, 343-47, 377-81). On May 28, 2010, Dr. Werlla completed a Mental Status Form on Claimant. She diagnosed Claimant with Major Depression, recurrent, moderate and Generalized Anxiety Disorder. Dr. Werlla stated Claimant interacted socially with other group members at most group meetings. She continued to experience major depression but had adhered to her medication for treatment. She appeared to handle group conflict in a reasonable manner. As far as Claimant's activities of daily living, she spent much of her time on tasks of relatively low importance, shops for groceries, then withdraws from social contact. Claimant's ability to remember, comprehend, and carry out simple or complex instructions on an independent basis changes with her mood. Dr. Werlla estimated Claimant could not survive in groups of more than one hour in duration at that time in responding to work pressures, supervision, and co-workers. (Tr. 269).

In her decision, the ALJ gave Dr. Werlla's opinion reflected on the Mental Status Form "little weight" or to the GAF scores of 46, 50, and 46 which were contained in the treatment notes. The ALJ

found Dr. Werlla's treatment notes do not support this level of limitation. Instead, the ALJ found the DDS physicians' opinions on mental limitations were better supported but rejected their opinions on physical limitations. (Tr. 25).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

7

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's explanation for rejecting Dr. Werlla's opinion is skeletal at best. She states the weight given to the opinion without citing to any of the treatment records which ostensibly give rise to the considerably reduced weight. Moreover, the ALJ compounds the deficiency of the analysis by stating she gave more weight to the DDS physicians' opinions on mental status but little

8

weight to the opinions on Claimant's physical limitations with little or no explanation for doing so. This scant analysis smacks of the prohibited act of endorsing a portion of an opinion which supports a finding of non-disability while rejecting the portion of the opinion which does not. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). On remand, the ALJ shall provide specific and legitimate reasons for giving the weight to Dr. Werlla's opinion as well as the DDS physicians' opinions that she affords each.

### Credibility Determination

The ALJ cited to Claimant's testimony that pain severely limited her ability to walk and sit. He also reflected Claimant's mental problems such as hearing voices every night, worsening anxiety, problems being around people, thoughts of physically hurting but not killing her husband, and panic attacks. (Tr. 24-25). The ALJ then, without further explanation, rejected Claimant's testimony on functional limitations citing the oft-used phrasing that the testimony is rejected insofar as it conflicts with the ALJ's pre-determined RFC. (Tr. 25). This analysis of Claimant's credibility is wholly inadequate.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68

F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ failed to consider any of these factors except for the fact that Claimant failed to seek psychiatric treatment at Wagoner Hospital in accordance with Dr.

10

Werlla's recommendation (whose opinion the ALJ found was entitled to "little weight"). (Tr. 24). Claimant testified she was scared to go to the hospital which the ALJ apparently did not consider. (Tr. 52-53). On remand, the ALJ shall reassess Claimant's credibility providing a more detailed explanation on the rejection of her testimony on her restricted activities. Additionally, the ALJ shall consider the reason provided in the testimony for Claimant failing to seek treatment at Wagoner Hospital and whether her mental condition itself may contribute to her failure to seek such treatment.

### Step Four and Five Evaluation

Among a litany of disjointed arguments, Claimant identifies two main bases for challenging the ALJ's analysis at steps four and five. First, Claimant contends the ALJ improperly rejected her low GAF scores. Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an

ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of

considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). In this instance, the ALJ rejected Dr. Werlla's findings on the low GAF scores. Since she failed to provide adequate explanation for the rejection of Dr. Werlla's opinions, she should reconsider whether evidentiary support is present in the record for the lower GAF scores found by Dr. Werlla on remand.

Claimant's second argument consists of a perceived requirement that the limitations found in the paragraph B criteria must be included in the hypothetical questioning of the vocational expert. This Court rejects this notion as it is unsupported by the regulations and the case authority in this Circuit. The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. R. 96-8p. The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC

based solely upon the finding at step three is not error. Beasley v. Colvin, 520 Fed. Appx. 748, 754 (10th Cir. 2013). The court also declined the claimant's invitation to read Franz v. Astrue, 509 F.3d 1299, 1303 n.3 (10th Cir. 2007) as "requiring an ALJ's RFC assessment to mirror his step three-findings," finding such language as "dicta." Id. at 754 n.3.

Claimant cites to the case of Wells v. Colvin, 727 F.3d 1061, 1065 n.3 (10th Cir. 2013) in support of his argument that the paragraph B criteria limitations must be included in the hypothetical questions posed to the vocational expert. The footnote simply does not state this position. The court found a mild restriction should have been considered at step two and subsequent steps. It does not require or even suggest the inclusion of the restrictions in the questioning of the expert. This Court finds no error in the hypothetical questioning of the vocational expert in this regard.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the**

**matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 30th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE